IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | | |
|---|---|---|
| ANDREA LAAKSO MAXWELL, | ) | |
| individually and as Independent | ) | |
| Administrator of the Estate of | ) | |
| William Maxwell, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | No: |
| | ) | |
| -vs- | ) | |
| | ) | |
| Outagamie County Jail | ) | |
| Wisconsin Department of Corrections | ) | |
| Correct Care Solutions | ) | |
| Officer Scott Koehnke | ) | |
| Officer Fay Geenan | ) | |
| Officer Ann Gorski | ) | |
| Katrina Dorow-Stevens | ) | |

## COMPLAINT AT LAW

NOW COMES the Plaintiff, ANDREA LAAKSO MAXWELL, individually and as

Independent Administrator of the Estate of William Maxwell, deceased, by and through her

attorneys, ROMANUCCI & BLANDIN, LLC; and complaining of Defendants Outagamie

County, Wisconsin Department of Corrections, Correct Care Solutions, Koehnke, Geenan,

Gorski, and Dorow-Stevens and pleading hypothetically and in the alternative, states as follows:.

## JURY DEMAND

1.      Plaintiff ANDREA LAAKSO MAXWELL, individually and as Independent

Administrator of the Estate of William Maxwell, deceased hereby demands a trial by jury.

## INTRODUCTION

2.      Plaintiff, ANDREA LAAKSO MAXWELL, individually and as Independent

Administrator of the Estate of William Maxwell, deceased, brings this suit for a violation of

William Maxwell's rights under the Fourteenth and Eighth Amendment to the United States

Constitution and brings this action pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 and Wisconsin state law claims.

3.  On November 15, 2017, the Circuit Court of Outgamie County, Wisconsin, Probate Division, appointed Andrea Laakso Maxwell as Special Administrator for the Estate of William Maxwell, deceased.

4.  This cause of action arises out of the violation of Mr. Maxwell's rights that led to his death while in the custody of the WISCONSIN DEPARTMENT OF CORRECTIONS (hereinafter "WDOC") at the Outagamie County Jail.

5.  At all times relevant hereto, Defendant Outgamie County, WISCONSIN (hereinafter referred to as "OUTGAMIE COUNTY") was a political subdivision of the State of Wisconsin, organized and existing under and by virtue of the laws of Wisconsin.

6.  At all times relevant hereto, Defendant Wisconsin Department of Corrections was a political subdivision of the State of Wisconsin, organized and existing under and by virtue of the laws of Wisconsin.

7.  At all times relevant hereto, Defendant Correct Care Solutions, LLC was a Tennessee limited liability company. During the time of the death of William Maxwell, Correct Care Solutions operated, profited, and transacted business in Outgamie County, Wisconsin and purposefully availed itself of Outgamie County, Wisconsin and the citizens of Outgamie County, Wisconsin, including through it operations at Outgame County Jail.

8.  This cause of action arises from those injuries caused during Mr. Maxwell's incarceration caused by Defendants.

9.     This cause of action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Mr. Maxwell's rights as secured by the United States Constitution.

10.     This cause of action is for money damages brought pursuant to 42 U.S.C. § 1983 and the Fourteenth and Eighth Amendments to the United States Constitution, and Wisconsin state law claims against Defendants.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§1331, and 1343, as well as supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. §1367(a), as those state law claims arise from the same case or controversy as the federal question in this matter, specifically 42 U.S.C. §1983.

12.     Venue is proper in this Court under 28 U.S.C. §1391(b) because a substantial portion of the incidents, events, occurrences, and omissions giving rise to this action occurred in the eastern district of Wisconsin.

## PARTIES

13.     At all times relevant hereto Plaintiff ANDREA LAAKSO MAXWELL, individually and as Independent Administrator of the Estate of William Maxwell, Deceased was a citizen of the United States and resident of the state of Wisconsin.

14.     During all relevant times, Defendant Officer Scott Koehnke was employed by the WISCONSIN DEPARTMENT OF CORRECTIONS and/or Outgamie County.

15.     During all relevant times, Defendant Officer Fay Geenan was employed by the WISCONSIN DEPARTMENT OF CORRECTIONS and/or Outgamie County.

16.     During all relevant times, Defendant Officer Ann Gorski was employed by the WISCONSIN DEPARTMENT OF CORRECTIONS and/or Outgamie County.

17.     During all relevant times, Defendant Katrina Dorow-Stevens was employed by Correct Care Solutions.

18.     At all times relevant to this complaint, Defendants were acting under color of state law and their conduct constituted state action.

## FACTS

### A. June 28, 2017 Incident

19. William Maxwell, on previous incarceration with Outgamie County, had been on medication for depression and anxiety and had been prescribed buspar.

20. During the previous incarcerations, Maxwell was noted to be "an anxious mess" by medical staff and experiencing panic attacks.

21. During the previous incarceration, Maxwell repeatedly requested his anxiety medication and said he had weird feelings in his head from the buspar and was prescribed Prozac as well.

22. A few weeks before his admission Maxwell had been placed on a 72-hour hold.

23. Before being incarcerated, Maxwell had attempted suicide twice before, including 6 months before his incarceration, which he informed the jail in the inmate screening report, and once by asphyxiation, which Maxwell described in his medical records from a prior incarceration.

24. When William Maxwell was admitted to Outgamie, he informed the jail in the inmate screening report that he had anxiety and depression and had informed them on a previous incarceration that he had bipolar disorder.

25. Upon his admission, Maxwell informed the jail that he had used illicit substances in the last 20-30 hours and had alcohol in his system.

26. At the time of his admission, Maxwell was experiencing withdrawal.

27. On June 24, 2017, Maxwell's mother called to inform the jail that Maxwell had expressed that he would hurt himself by contacting Katrina Dorow-Stevens at the  at Correct Care Solutions.

28. Maxwell was placed in a holding cell and seen by mental health staff due to his "emotional state".

29. Maxwell informed jail staff that he was on gabapentin and antidepressants but never received them.

30. In June of 2017, Maxwell was considered a "red-tag" which required him to have a cell-mate.

31. Maxwell was known by inmates to have mental health problems and known by multiple inmates to have said he wanted to hurt himself.

32. Despite this information and behavior, Physicians indicated that Maxwell had "no red flags for suicide risk".

33. On June 24, 2017 Maxwell was moved out of the holding cell to the 4-I Block.

34. On June 26, 2017, Maxwell was moved out of the 4-I Block to the 5-G Block.

35. On June 26, 2017, on the 5-G Block, Maxwell was moved into a cell with Inmate Rinehart.

36. As of June 26, 2017, Maxwell was believed by other inmates to have been on suicide watch for a week.

37. On June 26, 2017, Maxwell indicated in a recorded call to a friend, available to jail authorities, that he was on suicide watch and that he had been thinking about suicide every minute.

38. Despite the fact that he was thought to be on suicide watch by inmates and the Department of Corrections had indicated concerns of observation/suicide watch, Maxwell was never placed on suicide watch.

39. On June 26, 2017, Maxwell was issued a minor ticket by Officer Skaleski for not standing during the standing count in 5G, per Wisconsin Administrative Code 350.

40. On June 27, 2017, Maxwell received news that his wife "never wanted to speak to him again".

41. On June 27, 2017, Maxwell made a recorded call, available to jail authorities, indicating that he was "thinking about suicide every 20 minutes and trying to fight it off" and "it would be so easy to check out".

42. On June 28, 2017, it was well known that Maxwell had suicidal tendencies.

43. On June 28, 2017, Maxwell informed Defendants that he was feeling very anxious and depressed, that he had anxiety and would like to speak with the jail nurse regarding anti-anxiety medication and that he been feeling like this for days.

44. On June 28, 2017, Maxwell informed Defendants that "If there is no chance of help don't see me please."

45. On June 28, 2017, the 5G Block was visible on surveillance being monitored by jail officers, including but not limited to Officer Ann Gorski.

46. On June 28, 2017, Maxwell was seen staring up at the upper tier railing for about 20 minutes and overheard talking about jumping off the tier.

47. On June 28, 2017, Defendants including Officer Geenen, was aware that Mr. Maxwell had family court and may have been served a restraining order from a family member.

48. Officers including Deputy Langner were aware that Maxwell left the court room crying and was very emotional during the hearing.

49. On June 28, 2017, Officer Fay Geenan did 2-3 checks of Block 5-G and did not notice anything "unusual".

50. On June 28, 2017, at or around 11:30AM, Officer Koehnke served G Block Lunch and provided everyone a tray.

51. Officer Koehnke was aware that Maxwell was unstable but was unaware of him being on suicide watch.

52. On June 28, 2017, at or around 11:40AM, Maxwell shared the news of the restraining order with Inmate Rinehart.

53. Maxwell teared up, cried and seemed distraught when describing the restraining order to Inmate Rinehart.

54. On June 28, 2017, at or around 11:40AM Maxwell asked his cellmate, Inmate Rinehart, if he could use the bathroom.

55. Maxwell then shook out his cell blanket.

56. On June 28, 2017, at 11:40AM, Maxwell hung his blanket on the cell bars covering the front of his cell.

57. Inmate Rinehart moved to the next cell and waited.

58. On June 28, 2017, at 12:27 PM, Defendant Officer Koehnke took count of the inmates in their cells from the window but did not enter the cell block.

59. At no time during the inmate count, did Officer Koehnke request Maxwell to shake the blanket to count him nor ask any other inmates to check on or check for Maxwell.

60. At no time during the inmate count, did Officer Koehnke enter the cell block.

61. Officer Koehnke did not believe he had to see an inmate to count him – but needed a "sign" from the inmate.

62. Officer Koehnke observed the blanket covering the door in Maxwell's cell, Cell 10.

63. Officer Koehnke did not recall whether he saw movement from the blanket covering the door in Maxwell's cell, Cell 10.

64. Officer Koehnke counted Maxwell during the standing count, despite Maxwell being behind the blanket, not seeing Maxwell and not recalling whether the blanket moved or not.

65. Maxwell did not shake the blanket in Cell 10 and neither did any of the nearby inmates.

66. Officer Koehnke assumed Block 5G – Cell 10 was empty despite not being able to see inside.

67. At least one other inmate, Inmate Bentson, laid in his bed during the count and waved at Officer Koehnke.

68. Inmates heard coughing or choking noise in the cell before Maxwell was discovered.

69. After the count, on June 28, 2017, at or around 12:29, Inmate Rinehart looked past the blanket covering of the cell to see if William Maxwell was "okay".

70. Inmate Rinehart discovered William Maxwell hanging from a bed sheet wrapped around the light in the cell.

71. Inmate Rinehart went to the railing and called down for someone to push the emergency call button.

72. Inmate Rinehart did not enter the cell or touch anything.

73. Inmate Krohe walked to the cell and pulled down the blanket covering the front of the cell and announced Maxwell had committed suicide.

74. Officer Ann Gorski could observe the blanket being pulled down in Cell 10, revealing Maxwell.

75. At 12:29 PM, the emergency button was pushed by Inmate Walton.

76. At 12:31 PM, officers entered the cell block and Maxwell's cell.

77. Only then, was Maxwell taken down from the ceiling and soon after, pronounced dead.

78. After the incident, Officer Scott Koehnke indicated that he "felt like an ass" because he "counted it and this shit happens".

79. Despite knowledge that Officer Koehnke, has a documented past of making poor decisions and intentionally taking shortcuts he only received a 1 day suspension as a result of the incident where Maxwell lost his life.

80. Maxwell made over ten calls expressing suicidal ideations in the two months before he died.

81. Outgamie Jail policy requires the following:

    a. **Welfare Check** - A welfare check involves a staff member standing outside of a housing unit accounting for all the inmates in a housing unit by ensuring they are responsive. The staff member will also make note of the atmosphere of the block and check for fire, safety and sanitation issues.

    b. **Inmate Accountability –** Inmates will be accounted for at various times throughout the day in an organized and accurate manner through a series of inside tours, welfare checks, formal counts and meal deliveries.

c. **Correctional Officers-** Correctional officers are responsible for the accuracy of each inmate count.

82. Prior to June 28, 2017, the Outgamie County Jail had a history of inadequate medical care and ill treatment of individuals suffering from mental health conditions and neurological conditions.

83. During the following incidents inmates at the Outgamie County Jail were refused medication, received medication late, or given incorrect medication:

    a. In May of 2016, a female inmate was not given Zoloft for 5 days and when she received her medication it was not administered correctly.

    b. In June of 2016, after having a seizure, a female inmate was refused anti-seizure medication for two days and after having a second seizure, refused anti-seizure medication for four days.

    c. On June 29, 2016, an entire cell block was not administered their morning medication.

    d. In June of 2016, an individual was denied his medication for bipolar disorder for 7 days after being incarcerated.

    e. An inmate who was denied his bi-polar disorder medication for a month, attempted suicide as the withholding of his medication caused a psychotic breakdown.

    f. A female inmate who was not provided her morning medication until she laid on the floor and refused to get up without the medication.

    g. From April 2017 to at least July 2017, an inmate was not provided a medical evaluation despite recommendation from a psycho-diagnosis evaluation, regarding schizophrenia and schizoaffective disorder.

84. Prior to June 28, 2017 and after, the Outgamie County Jail had a history of increased suicides by inmates.

85. Between 2012 and 2016, Outgamie Jail saw a twofold increase in suicides.

86. Prior to June 28, 2017 and after, the Outgamie County Jail had a history of increased suicides by inmates using the sheets on their beds to commit suicide within cells.

87. The following suicides occurred prior to June 28, 2017 and after, at the Outgamie County Jail:

   a. In 2012, suicide was attempted 13 times with no fatalities.

   b. At the end of the year in 2015, an inmate committed suicide.

   c. In 2016, 21 suicides were attempted, with two deaths.

   d. In 2017, two inmates committed suicide, including Maxwell on June 28, 2017 and a second man on August 5, 2017 using bedsheets.

   e. In June 2018, a man committed suicide who had been cleared from suicide watch;

   f. In April 2019, a man was found to have hanged himself with sheets in his cell.

88. Before June 2017, Outgamie County Jail was aware that sheets were being used in all suicide attempts resulting in death.

89. Before June 2017, Outgamie County Jail was aware that suicides had increased twofold.

90. Before June 2017, Outgamie County Jail was aware that measures such as heavier blankets, extra patrols, cameras, mental health training for staff and creating a special needs section of the jail for inmates with mental illness, could decrease the rate of suicides.

91. Before June 2017, Outgamie County Jail and its agents were aware that individuals who had a history of suicide attempts is at a much higher risk than someone who has not made an attempt.

92. Before June 2017, Outagamie County Jail was placing inmates on watch if they sought mental health treatment, as Maxwell had done previously.

**FEDERAL CLAIMS FOR RELIEF**

**COUNT I—CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983: 8TH AMENDMENT FAILURE TO PROVIDE ADEQAUTE MEDICAL CARE AND PROTECT FROM SELF-DESTRUCTIVE TENDENCIES**
(*Estate of William Maxwell* **v. Defendants**)

1. Plaintiff incorporates by reference all preceding paragraphs.

2. At all times relevant to this complaint, William Maxwell, deceased, was in the care, custody and control of Outagamie County Jail and the WISCONSIN DEPARTMENT OF CORRECTIONS and Correct Care Solutions.

3. At all times relevant to this complaint, William Maxwell had a constitutional right to be free from cruel and unusual punishment while imprisoned at the Outagamie County Jail.

4. At all times relevant to this complaint, Defendants Koehnke, Geenan, Gorski, and Dorow-Stevens were employed by the WISCONSIN DEPARTMENT OF CORRECTIONS and Correct Care Solutions.

5. All actions performed by all Defendants were done under color of state law and constitute state action.

6. Defendants knowingly failed to intervene or respond in any way to the ongoing 8th Amendment violations experienced by William Maxwell.

7. William Maxwell had a clearly established constitutional right to be from cruel and unusual punishment under the 8th Amendment.

8. Under the 8th Amendment, William Maxwell was entitled to adequate medical care and to be protected from self-destructive tendencies.

9. At all relevant times and while involuntarily in the custody of Defendants, William Maxwell had a serious need for medical treatment for mental illness.

10. At all relevant times and while involuntarily in the custody of Defendants, William Maxwell was at serious risk of harm.

11. On June 28, 2017, while involuntarily in the custody of Defendants, William Maxwell committed suicide.

12. At all relevant times and while involuntarily in the custody of Defendants, Defendants acted with deliberate indifference to William Maxwell's serious need for medical treatment for mental illness.

13. At all relevant times and while involuntarily in the custody of Defendants, Defendants acted with deliberate indifference to William Maxwell's serious need to be protected from self-destructive tendencies including suicide attempts.

14. At all relevant times and while involuntarily in the custody of Defendants, Defendants knew William Maxwell had a serious need for medical treatment for mental health illness and a serious need to be protected from self-destructive tendencies.

15. Defendants' failure to provide adequate medical care constituted deliberate indifference to the known and obvious consequences of allowing an incarcerated person, with known mental health issues and suicidal tendencies to go untreated, in violation of William Maxwell's constitutional rights.

16. Defendants' failure to take action to prevent self-destructive tendencies constituted deliberate indifference to the known and obvious consequences of allowing an

incarcerated person, with known self-destructive and suicidal tendencies to not received

protection from self-destruction, in violation of the William Maxwell's constitutional rights.

17.    The effect of the inadequate medical care and mental health treatment, and

Defendants failure to protect William Maxwell from self-destructive tendencies, as outlined

above, deprived William Maxwell of his statutory and constitutional rights granted by the

Eighth Amendment to the United States Constitution and 42 U.S.C. Section 1983.

18.    As a result of Defendants' deliberate indifference to the inadequate medical care

and mental health treatment of William Maxwell and Defendants failure to protect William

Maxwell from self-destructive tendencies, William Maxwell completed suicide.

19.    Moreover, as a result of Defendants' conduct, William Maxwell suffered injuries

and Plaintiff is entitled to recover all damages allowable for constitutional violations such as 42

USC § 1983, including compensatory damages, special damages, economic damages, all costs

incurred in prosecuting this action, and attorney's fees pursuant to 42 USC § 1988.

20.    WHEREFORE, Plaintiff ANDREA LAAKSO MAXWELL, individually and as

Independent Administrator of the Estate of William Maxwell, demands judgment against

Defendants Koehnke, Geenan, Gorski, and Dorow-Stevens for damages, costs, disbursements,

attorney's fees, interests, and for any further relief that this Court deems fair and just.

### COUNT II—CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983: 14TH AMENDMENT FAILURE TO PROVIDE ADEQUATE MEDICAL CARE AND PROTECT FROM SELF-DESTRUCTIVE TENDENCIES
### (*Estate of William Maxwell* v. Defendants)

1.    Plaintiff incorporates by reference all preceding paragraphs.

2.    At all times relevant to this complaint, William Maxwell, deceased, was in the

care, custody and control of Outagamie County Jail and the WISCONSIN DEPARTMENT OF

CORRECTIONS and Correct Care Solutions.

3.      At all times relevant to this complaint, William Maxwell had a constitutional right under the 14th to receive adequate medical care and be protected from self-destructive tendencies while imprisoned at the Outagamie County Jail.

4.      At all times relevant to this complaint, Defendants Koehnke, Geenan, Gorski, and Dorow-Stevens were employed by the WISCONSIN DEPARTMENT OF CORRECTIONS, Outagamie County, and Correct Care Solutions.

5.      All actions performed by all Defendants were done under color of state law and constitute state action.

6.      At all times relevant to this complaint, Defendants knowingly failed to intervene or respond in any way to the ongoing 14th Amendment violations experienced by William Maxwell.

7.      Under the 14th Amendment, William Maxwell was entitled to adequate medical care and to be protected from self-destructive tendencies.

8.      At all relevant times and while involuntarily in the custody of Defendants, William Maxwell had a serious need for medical treatment for mental illness.

9.      At all relevant times and while involuntarily in the custody of Defendants, William Maxwell was at serious risk of harm.

10.     On June 28, 2017, while involuntarily in the custody of William Maxwell completed suicide.

11.     At all relevant times and while involuntarily in the custody of Defendants, Defendants acted with deliberate indifference to William Maxwell's serious need for medical treatment for mental illness.

12. At all relevant times and while involuntarily in the custody of Defendants, Defendants acted with deliberate indifference to William Maxwell's serious need to be protected from self-destructive tendencies including suicide attempts.

13. At all relevant times and while involuntarily in the custody of Defendants, Defendants knew William Maxwell had a serious need for medical treatment for mental health illness and a serious need to be protected from self-destructive tendencies.

14. Defendants' failure to provide adequate medical care constituted deliberate indifference to the known and obvious consequences of allowing an incarcerated person, with known mental health issues and suicidal tendencies to go untreated, in violation of the William Maxwell's constitutional rights.

15. Defendants' failure to take action to prevent self-destructive tendencies constituted deliberate indifference to the known and obvious consequences of allowing an incarcerated person, with known self-destructive and suicidal tendencies to not received protection from self-destruction, in violation of the William Maxwell's constitutional rights.

16. The effect of the inadequate medical care and mental health treatment, and Defendants failure to protect William Maxwell from self-destructive tendencies, as outlined above, deprived William Maxwell, deceased, of his statutory and constitutional rights granted by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. Section 1983.

17. As a result of Defendants' deliberate indifference to the inadequate medical care and mental health treatment of William Maxwell, deceased, and Defendants failure to protect William Maxwell from self-destructive tendencies, William Maxwell completed suicide.

18. Moreover, as a result of Defendants' conduct, William Maxwell suffered injuries and Plaintiff is entitled to recover all damages allowable for constitutional violations such as 42

USC § 1983, including compensatory damages, special damages, economic damages, all costs incurred in prosecuting this action, and attorney's fees pursuant to 42 USC § 1988.

19.    WHEREFORE, Plaintiff ANDREA LAAKSO MAXWELL, individually and as Independent Administrator of the Estate of William Maxwell, Deceased, demands judgment against Defendants Koehnke, Geenan, Gorski, and Dorow-Stevens for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### COUNT III– CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983: *MONELL* (*Estate of William Maxwell* v. Defendants Wisconsin Department of Corrections and Outgamie County)

1. Plaintiff incorporates by reference all preceding paragraphs.

2. At all times relevant, WILLIAM MAXWELL had a constitutional right to be free from cruel and unusual punishment while imprisoned at the Outgamie County Jail.

3. At all times relevant, Defendant Outgamie County was a state entity, duly organized and existing under and by virtue of the laws of the State of Wisconsin and under the Wisconsin Department of Corrections.

4. At all relevant times, the employees, agents, and/or officers of Defendants Wisconsin Department of Corrections, Outgamie County, Correct Care Solutions, and Outgamie County Jail, including Defendants Defendants Koehnke, Geenan, Gorski, and Dorow-Stevens were acting pursuant to an expressly adopted official policy or a longstanding practice or custom of Correct Care Solutions, Outgamie County Jail and/or Outgamie County and the Wisconsin Department of Corrections.

5. At all times relevant, it was the duty of Defendants Correct Care Solutions, Outgamie County Jail and/or Outgamie County to refrain from subjecting others to a deprivation of rights, including WILLIAM MAXWELL.

6. Upon information and belief, Defendants Correct Care Solutions and Outgamie County, including their agents, employees, and/or officers at Outgamie County Jail, together with other Wisconsin Department of Corrections and/or Outgamie County Prison policymakers and supervisors maintained, *inter alia,* the following unconstitutional customs, practices, and/or policies:

    a.    Failure to hire, train, and place officers in the Outgamie County Jail with the experience and training to identify detainees who are suicide risks and take the right steps to provide them the required care;

    b.    Failure to hire, train, and place officers in the Outgamie County Jail with the experience and training to properly identify inmates that are or should be on suicide watch, observation, or provided medical care;

    c.    Failure to hire, train, and place officers in the Outgamie County Jail with the experience and training to ensure inmates are provided with necessary medical care and medication in a timely manner;

    d.    Failure to provide inmates with pre-existing mental health medication or administer doses appropriately;

    e.    Failure to review previous documentation of inmate mental health conditions upon readmission to Outgamie County Jail;

    f.    Failure to hire, train, and place officers in the Outgamie County Jail with the experience and training to adequately monitor detainees displaying a high risk of hurting or injuring themselves;

    g.    Failure to hire, train, and place officers in the Baker Correctional Center with the experience and training to investigate or take precautionary measures after observing an inmate repeatedly show signs of suicide and share thoughts of suicidal ideations;

    h.    Failure to hire, train, and place officers in the Baker Correctional Center with the experience and training to investigate or take precautionary measures after

being on put on notice that an inmate was likely to harm himself or had suicidal ideations;

i.     Failure to have adequate detainee monitoring policies and procedures;

j.     Failure to adequately monitor detainees despite video surveillance equipment;

k.     Failure to take appropriate measures to deal with growing number of suicides, including failing to remove bedsheets known to be used in growing number of suicide attempts;

l.     Failure to communicate between Correct Care Solutions and Outgamie County Jail staff regarding mental health threats, emotional distress, and suicidal ideations;

m.     Failure to hire, train, and place officers in the Outgamie County Jail with the experience and training to verify or count inmates who reside in a dorm before concluding standing counts or well-being checks;

n.     Failure to hire, train, and place officers in the Outgamie County Jail with the experience and training to verify inmate county by observation and without relying on a "shaking blanket" ;

o.     Failure to place inmates on suicide watch despite notice on initial intake, such as diagnosis of depression and anxiety, recent drug use, and recent attempts at suicide;

p.     Failure to enforce officers entering cell blocks to verify number of inmates during counts and failing to enforce that blankets cannot be placed over cells during standing counts;

q.     Failure to place inmates on suicide watch despite evidence that an individual was expressing suicidal ideations within Outgamie County Jail, including family members informing jail personnel that an individual had expressed suicidal ideations; repeated mention of suicide on over 10 phone calls;

r.     Withholding of mental health medication despite diagnosis, prescription and clear expression of symptoms;

s.     Failure to adequately treat and care for individuals suffering from mental health conditions and neurological conditions;

t.     Failure to separate, discipline, investigate and discharge officers in the Outgamie County Jail who have a record of taking shortcuts that put inmates' safety and well-being in jeapordy; and,

u. Failure to enforce the Outgamie County Jail policies on standing counts, welfare checks, inmate accountability, and correctional officers' responsibility for the accuracy of inmate counts.

7. Defendant Wisconsin Department of Corrections, Correct Care Solutions and Outgamie County, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged above. Despite having knowledge of the above, Defendants Wisconsin Department of Corrections, Correct Care Solutions and Outgamie County condoned, tolerated and through their own actions or inactions thereby ratified such policies.

8. Such Defendants Wisconsin Department of Corrections, Correct Care Solutions and Outgamie County also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of WILLIAM MAXWELL.

9. As a direct and proximate result of the Constitutional violations caused by the employees, agents and/or officers of Defendant Wisconsin Department of Corrections, Correct Care Solutions and/or Outgamie County, and other policymakers, William Maxwell was deprived of his liberty and suffered damages, including death.

10. WHEREFORE, Plaintiff ANDREA LAAKSO MAXWELL, individually and as Independent Administrator of the Estate of William Maxwell, Deceased , demands judgment against Defendants Wisconsin Department of Corrections, Correct Care Solutions and Outgamie County for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

**STATE LAW CLAIMS FOR RELIEF**

**COUNT IV - CIVIL RIGHTS VIOLATION UNDER THE WISCONSIN STATE**

## CONSTITUTION ARTICLE 1 SECTION 6, EXCESSIVE BAIL; CRUEL PUNISHMENTS

### (*Estate of William Maxwell* v. Defendants)

1.     Plaintiff incorporates by reference all preceding paragraphs.

2.     At all times relevant to this complaint, William Maxwell, deceased, was in the care, custody and control of Outagamie County Jail/ Outgamie County and the WISCONSIN DEPARTMENT OF CORRECTIONS.

3.     At all times relevant to this complaint, William Maxwell, had a constitutional right under Article 1, Section 6 of the Wisconsin State Constitution to be free from cruel and unusual punishment while imprisoned at the Outagamie County Jail.

4.     At all times relevant to this complaint, Defendants Koehnke, Geenan, Gorski, and Dorow-Stevens were employed by the WISCONSIN DEPARTMENT OF CORRECTIONS, Correct Care Solutions and/or Outagamie County.

5.     All actions performed by all Defendants were done under color of state law and constitute state action.

6.     Defendants knowingly failed to intervene or respond in any way to the ongoing constitutional violations experienced by William Maxwell.

7.     William Maxwell had a clearly established constitutional right to be from cruel and unusual punishment under Article 1, Section 6 of the Wisconsin State Constitution.

8.     Under Article 1, Section 6 of the Wisconsin State Constitution, William Maxwell, was entitled to adequate medical care and to be protected from self-destructive tendencies.

9.     At all relevant times and while involuntarily in the custody of Defendants, William Maxwell, had a serious need for medical treatment for mental illness.

10.     At all relevant times and while involuntarily in the custody of Defendants, William Maxwell, was at serious risk of harm.

11.     On June 28, 2017, while involuntarily in the custody of Defendants, William Maxwell, committed suicide.

12.     At all relevant times and while involuntarily in the custody of Defendants, Defendants acted with deliberate indifference to William Maxwell's serious need for medical treatment for mental illness.

13.     At all relevant times and while involuntarily in the custody of Defendants, Defendants acted with deliberate indifference to William Maxwell's serious need to be protected from self-destructive tendencies including suicide attempts.

14.     At all relevant times and while involuntarily in the custody of Defendants, Defendants knew William Maxwell had a serious need for medical treatment for mental health illness and a serious need to be protected from self-destructive tendencies.

15.     Defendants' failure to provide adequate medical care constituted deliberate indifference to the known and obvious consequences of allowing an incarcerated person, with known mental health issues and suicidal tendencies to go untreated, in violation of the William Maxwell's constitutional rights.

16.     Defendants' failure to take action to prevent self-destructive tendencies constituted deliberate indifference to the known and obvious consequences of allowing an incarcerated person, with known self-destructive and suicidal tendencies to not received protection from self-destruction, in violation of the William Maxwell's constitutional rights.

17.     The effect of the inadequate medical care and mental health treatment, and Defendants failure to protect William Maxwell, deceased, from self-destructive tendencies, as outlined above, deprived William Maxwell, deceased, of his constitutional rights granted by Article 1, Section 6 of the Wisconsin State Constitution.

18.     As a result of Defendants' deliberate indifference to the inadequate medical care and mental health treatment of William Maxwell and Defendants failure to protect William Maxwell from self-destructive tendencies, William Maxwell completed suicide.

19.     WHEREFORE, Plaintiff ANDREA LAAKSO MAXWELL, individually and as Independent Administrator of the Estate of William Maxwell, Deceased , demands judgment against Defendants Koehnke, Geenan, Gorski, and Dorow-Stevens and Defendants Wisconsin Department of Corrections, Correct Care Solutions and Outgamie County for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

Respectfully Submitted,

Dated: March 11, 2020                    By: __/s Bhavani Raveendran_____
                                         Attorney for Plaintiffs

                                         Randall L. Rozek
                                         ROZEK LAW OFFICES, S.C.
                                         3970 N. Oakland Ave, Ste 604
                                         Milwaukee, WI 53211
                                         Tel: (414) 374-4444

                                         Bhavani Raveendran
                                         ROMANUCCI & BLANDIN, LLC
                                         321 N. Clark Street, Suite 900
                                         Chicago IL 60654
                                         Tel: (312) 458-1000
                                         Fax: (312) 458-1004
                                         Email: braveendran@rblaw.net
                                         Attorney #: 6309968 (Ill.)