UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ANDREA LAAKSO MAXWELL,
Individually and as Independent
Administrator of the Estate of
William Maxwell, Deceased,

                Plaintiff,

     v.                                                             Case No. 20-CV-386

OUTAGAMIE COUNTY JAIL, et al.,

                Defendants.

---

## DECISION AND ORDER

---

### 1. Procedural History

On June 28, 2017, William Maxwell died as a result of having hung himself in his cell at the Outagamie County Jail. His widow, on her own behalf and as the representative of Maxwell's estate, brought suit against the jail and certain officials alleging, in part, that that they violated Maxwell's rights under the Eighth and Fourteenth Amendments of the United States Constitution. (ECF No. 36, at 12-17.) The court granted the defendants' motions for summary judgment and entered judgment in their favor. *Maxwell v. Outagamie Cty. Jail*, No. 20-CV-386, 2022 U.S. Dist. LEXIS 214261 (E.D. Wis. Nov. 29, 2022).

The plaintiff now asks the court to reconsider its decision with respect to defendant Scott Koehnke. (ECF No. 132.)

Koehnke was a correctional officer who conducted an inmate count a few minutes before inmates discovered Maxwell hanging. Maxwell had blocked his cell window with a blanket and, contrary to the jail's formal policy, Koehnke included Maxwell in the count despite not actually seeing him. Although it was technically a violation of the jail's rules, it was common for officers to allow inmates to obstruct their cell windows. *Maxwell*, 2022 U.S. Dist. LEXIS 214261, at *9. During counts, rather than removing the blanket, officers would routinely have inmates shake the blanket to signal they were alive and well in the cell. Koehnke testified that, although he did not ask Maxwell to shake the blanket, he saw the blanket move a bit and relied on that to indicate that Maxwell was alive in the cell. *Id.*

This court concluded that a reasonable finder of fact could find Koehnke's actions were unreasonable under the Fourteenth Amendment. *Id.* at *20-*25. Two factors were significant in that conclusion. First, Maxwell was subject to a "red tag." A red tag was the jail's means of designating inmates who should have cellmates because a physical or mental health condition such as diabetes, epilepsy, or history of attempted suicide made it risky for them to be alone. Second, Koehnke relied on a perceived slight movement of a blanket rather than the customary practice of having Maxwell shake the blanket. "Many things other than an action by a person in the cell can cause a hanging blanket to move slightly or appear to move slightly to a person walking by." *Id.* at *24.

2

Nonetheless, the court found that Koehnke was entitled to qualified immunity. Underscoring that qualified immunity is entitled to protect "all but the plainly incompetent or those who knowingly violate the law," *id.* at *27 (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)), the court held that the plaintiff had failed to demonstrate that Koehnke's actions violated clearly established law. Although it is clearly established that inmates are entitled to protection against the risk of suicide, framing the applicable principle as an inmate's right to protection from the risk of suicide addressed the question at "too high a level of generality." *Id.*; *see also White v. Pauly*, 580 U.S. 73, 79 (2017)). Even in light of Maxwell's red tag, Koehnke did not know (nor should he have known) that Maxwell was imminently suicidal, or even that he had any mental health history that put him at an increased risk of suicide. It was not clearly established that a correctional officer would be personally liable for a constitutional tort if he failed to clear an obstructed cell window and personally view an inmate, even an inmate subject to a red tag, when conducting a periodic inmate count.

The plaintiff, moving pursuant to Fed. R. Civ. P. 59(e), asks the court to reconsider its decision that Koehnke is entitled to qualified immunity.

**2. Applicable Law**

"A motion under Rule 59(e) may be granted only if there has been a manifest error of fact or law, or if there is newly discovered evidence that was not previously available." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (citing *Cincinnati Life Ins. Co. v. Beyrer*,

722 F.3d 939, 954 (7th Cir. 2013). "[I]t is well-settled that a Rule 59(e) motion is not properly utilized 'to advance arguments or theories that could and should have been made before the district court rendered a judgment ....'" *Sigsworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007) (quoting *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)).

3. Analysis

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White*, 580 U.S. at 78 (2017)). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). In other words, "[t]he principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 244; *see also White*, 580 U.S. at 78-79. The unlawfulness of the officer's actions must have been "apparent" under pre-existing law. *White*, 580 U.S. at 80. "This

4

sounds like a high bar because it is—qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Doxtator v. O'Brien*, 39 F.4th 852, 863 (7th Cir. 2022) (brackets and quotation marks omitted) (quoting *Lopez v. Sheriff of Cook Cnty.*, 993 F.3d 981, 988 (7th Cir. 2021)); *see also Mullenix*, 577 U.S. at 12 (quoting *Malley* v. *Briggs*, 475 U.S. 335, 341 (1986)).

It is the plaintiff's burden to show that a particular right is "clearly established." *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019). "To meet that burden, a plaintiff's asserted right must be defined 'at the appropriate level of specificity.'" *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). The Supreme Court has repeatedly reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White*, 580 U.S. at 79 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity … into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Id.* (ellipses in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

The plaintiff must be able to point to "a case where an officer acting under similar circumstances" as the defendant was found to have violated the constitution. *White*, 580 U.S. at 79 (2017). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Mullenix*, 577 U.S. at 12 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)); *see also Weiland v. Loomis*, 938 F.3d 917, 919 (7th Cir. 2019) (quoting *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); citing cases) ("Over and

5

over, the Supreme Court has held that a right is 'clearly established' only if it has been 'defined with specificity."). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix*, 577 U.S. at 12 (emphasis in original) (quoting *al-Kidd*, 563 U.S. at 742).

Although this "'does not require a case directly on point' for a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *White*, 580 U.S. at 79 (internal quotation marks and brackets omitted) (quoting *Mullenix*, 577 U.S. at 12); *see also Weiland*, 938 F.3d at 920 ("A principle can be clearly established without matching a later case's facts. The search is for an *appropriate* level of generality, not the most particular conceivable level." (emphasis in original)).

The plaintiff argues that Koehnke is not entitled to qualified immunity because "a pretrial detainee's Fourteenth Amendment right to be free from an unreasonable risk of suicide while in custody was clearly established come June 28, 2017." (ECF No. 132 at 2-3; *see also id*. at 7.) But that articulation of the relevant clearly established principle is the sort of overly general statement that the Supreme Court has repeatedly found insufficient to overcome qualified immunity. For example, the Supreme Court in *Mullenix* held that lower courts erred in framing the relevant principle as "deadly force is only permissible where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Mullenix*, 577 U.S. at 12.

Courts are required to consider the specific circumstances presented, which led the Court in *Mullinex* to frame the relevant principle as using deadly force on an "intoxicated fugitive, set on avoiding capture through high-speed vehicular flight, who twice during his flight had threatened to shoot police officers, and who was moments away from encountering an officer …." *Mullenix*, 577 U.S. at 13. The Court concluded that the officer who shot the driver four times with a rifle from a highway overpass was entitled to qualified immunity despite the fact that a supervisor told him to wait, innocent bystanders had not been endangered by the driver, and officers had not first attempted other means, such as spikes, to stop the vehicle. *Id.* at 19; *see also Brosseau*, 543 U.S. at 200 (framing the question as whether it was clearly established that it violates the constitution "to shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight").

In *Anderson v. Creighton*, 483 U.S. 635 (1987), the Supreme Court faulted the court of appeals for identifying the clearly established principle as simply that a person has "the right to be free from warrantless searches of one's home unless the searching officers have probable cause and there are exigent circumstances." *Id.* at 640. The Court found that this "consisted of little more than an assertion [of] a general right." *Id*. The court of appeals erred by not taking into consideration the actual circumstances that the defendants faced, which included that they conducted a warrantless search of a home

because they believed a person who had robbed a bank earlier that day was inside. *Id*. at 637, 640-41.

Similarly, the Court in *City of Escondido v. Emmons*, 139 S. Ct. 500 (2019), held that the court of appeals erred when it articulated the applicable principle when it said that "[t]he right to be free of excessive force" was clearly established at the time of the events in question. *Id*. at 502; *see also Jump v. Vill. of Shorewood*, 42 F.4th 782, 792 (7th Cir. 2022) (noting that the court has repeatedly told litigants that the principle that "an arrest made without probable cause violates the Fourth Amendment" "is at an impermissibly high level of generality for qualified immunity purposes").

An example of just how high the qualified immunity bar is for plaintiffs is *Cope v. Cogdill*, 3 F.4th 198 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 2573 (2022). When an inmate was booked into jail he reported wanting to kill himself and having tried to kill himself two weeks earlier. *Id*. at 202. He reported having been diagnosed with schizophrenia and displayed signs of mental and emotional disturbance. Within a day of being booked he unsuccessfully attempted to hang himself. *Id.* at 203. The following morning he wrapped a phone cord around his neck and hung himself. *Id*. After a minute or two, his body stopped moving. *Id*. Throughout this entire process, and for the next five minutes after the inmate stopped moving, a jailer stood outside the cell and watched but did not enter. *Id*. Only when the jail administrator arrived did the jailer open the cell door and unwrap the phone cord from around the inmate's neck. *Id*. Neither the jailer nor the administrator

8

Case 2:20-cv-00386-WED   Filed 02/06/23   Page 8 of 15   Document 137

made any lifesaving efforts, and it was only after they entered the cell that they called paramedics, who arrived about seven minutes later. *Id*. The inmate died the following day. *Id*.

The court of appeals held that the jailer was entitled to qualified immunity with respect to his delay in entering the cell because he was the only person on duty and waiting for a second person to arrive before opening the cell was consistent with his training. *Id.* at 208. He was likewise entitled to qualified immunity with respect to his delay in calling for emergency medical help because existing caselaw did not clearly establish an obligation to call for medical help immediately. *Id.* at 210.

The plaintiff here offers only "a broad general proposition" and fails to take into consideration the defendant's "particular conduct" and "the specific context of the case." *See Mullenix*, 577 U.S. at 12. There is no debate that jail officials violate the Fourteenth Amendment when they unreasonably ignore a pretrial detainee's serious risk of suicide. *See Maxwell*, 2022 U.S. Dist. LEXIS 214261, at *14. The court accepted that a reasonable finder of fact could conclude that Koehnke's conduct was unreasonable. *Id.* at *23. But this was merely the first step of the analysis; to prevail the plaintiff then had to demonstrate that Koehnke was not entitled to qualified immunity. That requires consideration of Koehnke's specific conduct. The broad principle proffered by the plaintiff was insufficient.

In terms of specificity under the qualified immunity analysis the principle proffered by the plaintiff is little different than other overly broad principles of constitutional law, such as "deadly force is only permissible where the officer has probable cause to believe that the suspect poses a threat of serious physical harm," *Mullenix*, 577 U.S. at 12, a person has a "right to be free from warrantless searches of one's home unless the searching officers have probable cause and there are exigent circumstances," *Anderson*, 483 U.S. at 640, a person has a right not to be subject to excessive force, *Emmons*, 139 S. Ct. at 502, and "an arrest made without probable cause violates the Fourth Amendment," *Jump*, 42 F.4th at 792. The plaintiff has not pointed to any case clearly establishing that Koehnke's *specific* conduct—failing to clear the obstructed cell window and actually observe the inmate—violated the constitution.

Occasionally, the Court of Appeals for the Seventh Circuit has, in the qualified immunity context, accepted broad principles similar to the one articulated by the plaintiff. For example, it noted that "[t]he Supreme Court has long held that prisoners have an Eighth Amendment right to treatment for their 'serious medical needs.'" *Estate of Clark v. Walker*, 865 F.3d 544, 553 (7th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "For purposes of qualified immunity, that legal duty need not be litigated and then established disease by disease or injury by injury. Risk of suicide is a serious medical need, of course." *Id.* (citing *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001)). But the court went on to say that, given the posture of the case, it was unable to consider the

defendant's arguments that his "particular conduct" was not sufficiently analogous to prior cases. *Id*.

In *Cavalieri v. Shepard*, 321 F.3d 616 (7th Cir. 2003), the Seventh Circuit stated that "at bottom" the applicable clearly established constitutional principle was "the right to be free from deliberate indifference to suicide." *Id*. at 619. But the court's discussion reveals a more fact dependent analysis of the qualified immunity question. The court underscored that the defendant, a police officer, had made several calls to the jail where the plaintiff was detained and failed to communicate that the plaintiff had asked to speak to a mental health counselor, the defendant had learned from the plaintiff's former girlfriend that he had threatened to kill himself, he specifically threatened to kill himself if he went to jail, and the plaintiff's mother reported that he should be on suicide watch because he needed a counselor and his mental state was "fragile." *Id.* at 619, 623.

Similarly, in *Hall v. Ryan*, 957 F.2d 402 (7th Cir. 1992), another case relied on by the plaintiff (ECF No. 132 at 7-8), the court rejected the defendants' claim of qualified immunity in light of the plaintiff's erratic behavior and evidence that could support a finding that the defendants knew of the plaintiff's extensive suicidal history. *Id.* at 405-06.

In all three of those cases—*Clark*, *Cavalieri*, and *Hall*—the defendants knew that the inmate was at a severe and imminent risk of suicide. As such, greater specificity as to the applicable principle was unnecessary. But simply because a broad principle was found

to be appropriate under certain facts does not mean that the broad principle is appropriate under all facts.

In the absence of evidence that Koehnke knew (or should have known) that Maxwell was imminently suicidal, the broad principle that a pretrial detainee has a right to be free from an unreasonable risk of suicide is insufficient to overcome qualified immunity. *Cf. Gaston v. Ploeger*, 229 F. App'x 702, 712 (10th Cir. 2007) ("Because there is no evidence that [the defendant] considered [the inmate] suicidal, he could not have been deliberately indifferent to the risk of suicide. Accordingly, we conclude that he is entitled to qualified immunity."). There was nothing about Maxwell having obstructed his window that would have suggested to Koehnke that Maxwell was suicidal or otherwise in need of urgent attention. Obstructed cell windows were common, and although not technically allowed, jail officials occasionally tolerated them in a concession to inmate privacy.

Koehnke knew (or should have known) only that Maxwell was subject to a red tag. A red tag was not a designation that a person was subject to "observation" or on "suicide watch." It was not even necessarily related to an inmate's risk of suicide; it was also employed for inmates with medical conditions such as diabetes or epilepsy, and there is no evidence that Koehnke knew the reason for Maxwell's red tag. As a practical matter it meant only that the inmate was to be assigned a cellmate.

12
Case 2:20-cv-00386-WED   Filed 02/06/23   Page 12 of 15   Document 137

There is an obvious tragic fortuity underlying this case. Koehnke was tasked with ensuring that all inmates were safe, and he happened to be at Maxwell's cell at a time when, had he just done what jail policy required—cleared the obstructed window and observed Maxwell—he perhaps could have prevented Maxwell's death. But a correctional officer does not violate the constitution merely by not following jail policy. *Maxwell*, 2022 U.S. Dist. LEXIS 214261, at *20 (quoting *George v. Beaver Cty.*, 32 F.4th 1246, 1254 (10th Cir. 2022)); *see also Brandon v. Smith*, No. 06-1316, 2010 U.S. Dist. LEXIS 156764, at *46 (C.D. Ill. Aug. 18, 2010) ("[H]is duty to inspect cells at half hour intervals was one imposed by state regulations and Jail policy, not by the Constitution. Violation of such a duty, without more, does not rise to the level of a constitutional tort.") (citing *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006)).

Even now the plaintiff has failed to point to a factually analogous case clearly establishing that a correctional officer violates the constitution when he fails to remove an obstruction from a cell window. Nor has the plaintiff identified any case clearly establishing that a correctional officer violates the constitution if he fails to personally observe an inmate at a particular interval.

Koehnke, on the other hand, has identified cases where courts have concluded that similar conduct does *not* violate the constitution (or at least merits qualified immunity). *See, e.g.*, *Peterson v. Yeates*, No. 1:08 cv 40 BCW, 2011 U.S. Dist. LEXIS 66330, at *29 (D. Utah June 21, 2011) (holding that an officer who ignored a blanket obstructing a lower bunk

during an inmate count was not liable because he lacked the requisite knowledge of the inmate's suicide risk); *Brandon*, 2010 U.S. Dist. LEXIS 156764, at *45-*47 (holding that an officer did not violate the constitution when he failed to conduct a cell check as required by state law and jail policy (and may have ignored an obstructed cell window) because, although the inmate exhibited signs of mental illness, the officer did not know that the inmate was at substantial risk of suicide); *see also Gaston*, 229 F. App'x at 712 (holding that officer was entitled to qualified immunity because, although the inmate was acting unusual and had covered his cell window, he was not an obvious suicide risk); *Kelley Vale-Gugliuzzi As Pers. Representative of the Estate of Joshua Bellamy v. Layton*, No. 1:17-cv-03432-JRS-DML, 2020 U.S. Dist. LEXIS 113674, at *30-*35 (S.D. Ind. June 29, 2020) (holding that deputies were entitled to qualified immunity for failing to remove a blanket obstructing a cell window, behind which an inmate killed himself).

Because there is no evidence that Koehnke subjectively knew that Maxwell posed a severe and imminent risk of suicide, the plaintiff has not shown that his actions violated a clearly established constitutional right of which a reasonable person would have known. Consequently, Koehnke is entitled to qualified immunity.

**4. Conclusion**

The plaintiff's motion for reconsideration amounts to merely a re-argument of issues that were or should have been presented in response to the defendants' motions

14
Case 2:20-cv-00386-WED   Filed 02/06/23   Page 14 of 15   Document 137

for summary judgment. The plaintiff has not demonstrated any manifest error of law or fact.

**IT IS THEREFORE ORDERED** that the "Plaintiff's Motion Pursuant to Federal Rule of Civil Procedure 59(e) to Alter or Amend a Judgment" (ECF No. 132) is **denied**.

Dated at Milwaukee, Wisconsin this 6th day of February, 2023.

_WILLIAM E. DUFFIN_
WILLIAM E. DUFFIN
U.S. Magistrate Judge